People of the State of Illinois, Plaintiff-Defendant in Error, v. Walter Lee Butler, Defendant-Plaintiff in Error.

Gen. No. 51,135.

First District, First Division.

February 20, 1967.

David F. Holland, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert J. Beranek, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Walter Lee Butler, was convicted on the charge of rape after a bench trial and was sentenced to a term of five to ten years in the Illinois State Penitentiary. This appeal of his conviction was first taken to the Supreme Court and that Court transferred the appeal to this Court. On appeal the defendant contends that the State's evidence failed to establish beyond all reasonable doubt that the act of sexual intercourse was forcible and against the will of the complaining witness.

The prosecutrix, Eleanor Britt, was 57 and testified that about 6:00 p. m. on May 22, 1962, she walked alone to the apartment of Orlando Burks, an old friend. She said she noticed the defendant walking behind her and after she rang the bell, the defendant walked into the apartment as if he were with her. After a visiting neighbor of Burks left, the defendant locked the door and put a chair against it. He then beat Burks, striking him with his fists, a clock and other objects, and after striking the prosecutrix with his fists he tore off her clothes and had intercourse with her. She said he then let Burks out of the apartment and again had intercourse with her. When she heard the police she screamed and the defendant struck her again, splitting her lip.

On cross-examination she said Horace Montgomery was the janitor of a building in which she had resided, and that he had employed the defendant to decorate her apartment. She denied meeting the defendant in a tavern about 6:00 p. m. on her way to Burks. She said she didn't remember him when he walked into the apart-

ment behind her and had said nothing to him. She said they had not had anything to drink at the apartment and after he beat both of them, he stripped her, undressed himself and during the intercourse she made no outcry or resistance because, "If I'd scream, the man would have broken my neck."

Orlando Burks testified that when he opened the door he saw Eleanor Britt and the defendant so he invited them in. He said he didn't know the defendant and didn't remember seeing him before. After his neighbor left he said the defendant struck him several times with his fists and several objects causing him to bleed from his face and mouth. He said the defendant threatened to kill both of them, proceeded to rip Eleanor's clothes off and had intercourse with her. He said he left the apartment and notified the police and when they arrived at his apartment he heard Eleanor scream.

On cross-examination he said that when he asked the defendant why he was beating him he replied that he was paid to do it. He testified he tried to make an outcry, but the defendant choked him and said he was going to kill him. He also said Eleanor had never mentioned the defendant's name before and the defendant didn't tell him he was invited to the apartment by Eleanor.

Officer James May testified that when he saw Burks he was bleeding profusely from the face and was in a dazed condition. He first took Burks to a hospital, and when they later arrived at the apartment he heard a woman holler "Help, let me out," and a man say, "If you don't shut up, I'll break your damn neck." He said the bed sheet had bloodstains on it and a smashed clock was lying on the floor. He said Mrs. Britt told him that, "He raped me, and beat Burks," and that she was nude and had blood running out of her mouth and her face was swollen. On cross-examination he testified that he saw no bottles of liquor, but noticed the presence of

alcohol on defendant's breath and he appeared to have been drinking.

Horace Montgomery testifying on behalf of the defendant said he was the janitor of the building where Mrs. Britt had been a tenant, and that the defendant had worked for him as a painter. He said Mrs. Britt was told to leave her apartment because she was behind in her rent and had too much male company. He testified further that Mrs. Britt's reputation for morality and chastity was no good.

On cross-examination he said that he was a good friend of the defendant and would like to help him. He said he had seen Mrs. Britt and the defendant together on several occasions. On redirect he testified that Mrs. Britt would come to his apartment and they would drink and go to bed together. At that time he was a married man. He didn't know whether the defendant and Mrs. Britt were keeping company.

The defendant testified that he was twenty-five years of age and on the day in question he met Eleanor about 6:00 p. m. in a tavern and after drinking she asked him to go home with her. He said that when they entered the apartment one person left and then he and Burks got into a fight and Eleanor told him to let Burks out so he did. He said he was kind of drunk and took off his clothes and went to bed, but didn't remember whether they had intercourse. He said he was still sleeping when the police officers knocked on the door and when questioned by them he had told them he assaulted Burks, but did not rape her. He told them he had intercourse with Mrs. Britt before and that he didn't know Burks lived in the apartment when they entered. On cross-examination he said that it was the first time he saw Burks, and he remembered hitting him with his fists, but didn't know why.

Officer May testifying on redirect said that the defendant told him he met Burks and Mrs. Britt in a tavern,

268

that they were drinking and that afterwards the three went to Burks' apartment where they had an argument over a bottle of liquor. He further testified that he did not find a bottle in the apartment. On cross-examination he said that the defendant never told him that he had known Mrs. Britt before or that she invited him to the apartment.

 The defendant contends that the State failed to establish beyond reasonable doubt that the act of intercourse was forcible and against the will of the complainant. Although there is no definite standard fixing the degree of force required, it is the general rule that there must be satisfactory evidence that there was such actual force or threat of force that the victim's will to resist was overcome. People v. Elder, 25 Ill2d 612, 186 NE2d 27. Resistance is not necessary where it would be futile and would endanger the life of the woman, or when she is overcome by superior strength or paralyzed by fear. People v. Smith, 32 Ill2d 88, 203 NE2d 879. We have carefully examined the evidence and are satisfied that there was sufficient evidence, if believed, to show that the act of intercourse was forcible and took place after the complaining witness was beaten and in fear of her life. Burks, the owner of the apartment, who admittedly didn't know the defendant, was severely beaten and brought the police to his apartment and they heard the complaining victim yell for help and accuse the defendant of raping her.

In support of his contention defendant cites People v. Rossililli, 24 Ill2d 341, 181 NE2d 114; People v. Faulisi, 25 Ill2d 457, 185 NE2d 211; People v. Qualls, 21 Ill2d 252, 171 NE2d 612; People v. DeFrates, 33 Ill2d 190, 210 NE2d 467, amongst others, which are distinguishable from the instant case. In each of those cases the testimony of the prosecutrix was weakened by, or uncorroborated by the other facts and circumstances in evidence. In the instant case the prosecutrix's testimony

269

was corroborated by Burks' testimony to the beatings and the threat upon their lives; by the officer's testimony of the blood stains, smashed clock and that her mouth was bloody and her face swollen, and by the scream and her prompt complaint of rape to the officer.

 The matter of the credibility of the witnesses and the weight to be given their testimony is generally an issue for the determination of the trial court who has the opportunity of seeing and observing the manner and demeanor of the witnesses. People v. Henson, 29 Ill 2d 210, 193 NE2d 777. A reviewing court will not disturb the judgment of the trial court where there is ample evidence for his decision which we find to be the case here.

The judgment of the Criminal Division of the Circuit Court will therefore be affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.