THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY V. IVERSON, Defendant-Appellant.

(No. 72-5;

Second District—February 15, 1973.

Paul Bradley, of Defender Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

William R. Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Gary V. Iverson, appeals from a conviction of armed robbery after a jury trial. The primary issue he raises is whether giving the so-called "*Allen* charge" with the initial instructions to the jury constituted reversible error. He additionally claims he was not proven guilty beyond a reasonable doubt.

■■ The record clearly shows defendant's guilt beyond a reasonable doubt. Robert Soule, an accomplice who had already been convicted of the armed robbery, testified for the State, giving the details of the crime and stating defendant's participation in it. While the State had agreed to recommend a sentence of 2-5 years if Soule testified, his testimony appears positive and credible and no motive has been disclosed which would explain why Soule would identify the defendant rather than another as one of the four participants in the crime. The fact that an accomplice witness has been promised leniency does not prevent a finding of guilt beyond a reasonable doubt if the testimony is sufficient to convince the trier of the facts beyond a reasonable doubt. *People v. Nastasio* (1963), 30 Ill.2d 51, 55; *People v. Spence* (1971), 133 Ill.App.2d 171; 272 N.E.2d 739, 741.

■■ This is particularly true when, as here, the testimony of the accomplice is well corroborated. Two eye witnesses, victims of the crime, identified the defendant as one of the men who participated in the armed robbery. Another victim who did not see the defendant confirmed other aspects of the testimony of the accomplice witness. While a number of inconsistencies in the testimony were developed by extended and able cross-examination by the defendant's trial counsel, they did not create a reasonable doubt of guilt. The inconsistencies were vigorously argued to the jury and the resolution of the credibility of the various witnesses, including that of defendant and his alibi witness, was for the jury. (*People v. Novotny* (1968), 41 Ill.2d 401, 412.) In addition, a considerable amount of circumstantial evidence corroborated the testimony of the State's witnesses and cast doubt upon the alibi defense.

Defendant has placed the greater emphasis on the effect of the giving, over his objection, of the following "Court's Instruction #1" as a part of the original series:

"In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others, yet you should examine the questions submitted with proper regard and deference for the opinions of each other, and you should listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If a much larger number of jurors favor conviction, a dissenting juror should consider the reasonableness of his doubt when it makes no impression upon the minds of other jurors, equally intelligent and impartial, and who have heard the same evidence. If upon the other hand, the majority favors acquittal, the minority should ask themselves whether they might not reasonably doubt the correctness of their judgment.

If you should fail to agree on a verdict the case must be retried. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case can be tried any better or more exhaustively than it has been here, or that more or clearer evidence could be produced on behalf of either side.

You may now retire and reconsider the evidence in the light of the court's instructions."

The instruction is substantially in the form of the so-called "*Allen* charge"

as followed in some Federal Circuits. Section 7.07, 33 F.R.D. 611 (1967); *Allen v. United States* (1896), 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154.

Defendant argues that the giving of the *Allen* charge interferes with the deliberation of the jury. He maintains that the use of the instruction in the circumstances of this case would have created improper doubts in the minds of jurors as to how defendant's guilt should be decided. Since the charge was given before any deadlock developed, defendant contends that the "use of an erroneous instruction in an erroneous way" detracted from his right to a fair jury trial.

A recent decision of the Illinois Supreme Court, *People v. Prim* (1972), 53 Ill.2d 62, is relevant to the issue before us. The court, in general terms, noted the criticism which has been made of the *Allen* charge in its original form, but distinguished the variation of the charge before it which did not contain objectionable "heed the majority" language. The court did not find the instruction before it to be coercive, to have interfered with the deliberation of the jury to the prejudice of the defendant, or to have hastened the verdict. The giving of the instruction was held not to be reversible error. However, the court, acting under its supervisory powers, directed that

> "* * * hereafter the trial courts of this State when faced with deadlocked juries comply with the Standards suggested by the American Bar Association Minimum Standards Relating to Jury Trials above set forth." [1] 53 Ill.2d at 76.

Two important distinctions must be noted between the *Prim* case and the one before us. *Prim* involved a supplemental instruction given after the jury had deliberated for four hours. When brought into court, the foreman responded to the court's inquiry, saying "There is a chance", that the jury could arrive at a verdict. Here the instruction was given as a part of the original series of instructions before any possible deadlock could have been encountered. Second, in *Prim* the instruction did not contain language directing the jury to "heed the majority". In the instant case such language appears as the last two sentences of the first paragraph of the court's instruction.

The test which we apply to the issue before us is whether, upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant. (*People v. Prim* (1972), 53 Ill.2d 62; *People v. Golub* (1929), 333 Ill. 554, 561; *People v. Richards* (1968), 95 Ill.App.2d 430, 438.) The

---

[1] American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, pages 145-146 (Tentative Draft, now Approved Draft 1968).

time when the instruction is given, whether as a part of the original series, or after a deadlock is found to exist, is a circumstance to be considered in the determination of the coercive effect of the language used.[2]

As we have previously noted, the evidence factor weighs heavily against the defendant. The case, in our opinion, is not a close one. The jury deliberated some six hours after a two day trial. The length of the deliberation does not indicate that the jury was deadlocked or that the instruction had a coercive effect. The giving of the instruction as a part of the original series would appear in the circumstances of this case sufficiently to have minimized any coercive effect of the "heed the majority" language used.

■■ We do not, by our holding that the giving of the *Allen* charge was not reversible error under the circumstances of this case, thereby approve the giving of the instruction in any future case either as a part of the original charge or as a supplemental instruction. (See *U.S. v. Fioravanti* (3rd Cir. 1969), 412 F.2d 407, 419-420.) Cases tried after *Prim* will be governed by the direction of the Illinois Supreme Court to adhere to the American Bar Association Standards Relating to Trial by Jury, pages 145-156 (Tentative Draft, May 1968).

The judgment below is affirmed.

Affirmed.

T. MORAN, and GUILD, JJ., concur.

---

[2] We agree with those authorities which hold that when an *Allen* charge is incorporated in the initial instructions its coercive effect is minimized. (See *Nick v. United States*, (8th Cir. 1941), 122 F.2d 660, 674, *cert.* denied 314 U.S. 687; *United States v. Marcey*, (D.C. Cir. 1971), 440 F.2d 281, 286 n. 27.) But we also agree that, under the circumstances of a particular case, the distinction between giving of the instruction initially or after an apparent deadlock will not be controlling if prejudice is demonstrated by the record. *Cf. Green v. U.S.*, (5th Cir. 1962), 309 F.2d 852, 856 where the language in the initial instructions went far beyond the instruction before us in urging a verdict.