THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM CASNER, Defendant-Appellant.

(No. 72-349;

Second District—June 14, 1974.

Ralph Ruebner and Adam Lutynski, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

William Casner, the defendant, was convicted of rape, conspiracy, and battery after a jury trial. He was sentenced to a term of 5-15 years in the penitentiary for the offense of rape, 1-5 years for the offense of conspiracy, and to the time served awaiting trial for the battery offense.

Defendant appeals from the rape and conspiracy convictions contending that he was not proven guilty beyond a reasonable doubt; that the exposure of the jury to an *Allen*-type charge during the voir dire, closing argument and in the instructions requires a new trial; and that he may not be convicted for both the offenses of rape and conspiracy to commit rape.

From the entire record we have concluded that the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt. It would serve no useful purpose to go into the evidence in great detail. The complaining witness testified that she had agreed to work as a cock-

tail waitress on December 31, 1971, New Year's Eve. This was the first and only time she had worked as a cocktail waitress. The defendant Casner and one Burch (who was indicted with Casner but whose case was severed for trial) were bouncers at the cocktail lounge. The prosecutrix drank several drinks during the course of the evening, more after closing, and became sick. She asked another waitress who had secured the employment for her to take her home but was told that she should find another ride as the other girl was going to a party. The witness testified that the lounge owner's wife offered to take her home and that she assumed that she was going with her when the owner's wife and another girl helped her out to the car. She testified that Casner and Burch also got into the car; that she then passed out and that the next thing she remembered was being helped out of the car into the back seat of another car, with defendant driving and Burch also in front.

She said that from that point on she was sober and recalled everything although she was terribly ill. She may have dozed off from time to time but she assumed that she was being taken home. She then related the attacks by both the defendant and Burch, during the course of which she protested and was beaten by each of them.

A witness who had been employed as a babysitter testified that when the prosecutrix arrived home she was bruised about the face, under the left eye and showed blood under her left ear; her clothes were wrinkled and halfway off; her hair was terribly messed up; and she was hysterical and repeated that she had been beaten and raped. The babysitter called the police and the prosecutrix was taken to a hospital. The examining doctor testified that force had been used in the act of intercourse and that when he examined her the victim was in a highly emotional state requiring sedation. After the defendant knew that the police were looking for him he left the state and went to California, Nevada and Texas.

■■ The defense essentially was that the complaining witness voluntarily engaged in the sexual acts. From the record we would conclude, as the jury apparently did below, that defendant's testimony was improbable in its details, largely uncorroborated and generally incredible under all the circumstances. The verdict was based upon an abundance of supporting evidence and the record does not disclose a reasonable doubt of defendant's guilt.

Defendant contends the jury's exposure to an *Allen*-type charge during voir dire, during closing argument and in the written instructions, interfered with and prejudiced its deliberations.

The court in examining one of the prospective jurors stated that the verdict must be unanimous. The juror was asked whether he would listen to the arguments of other jurors if he found himself in the minority, and

was reminded that if the jury did not agree it would be necessary to have a trial before another jury, probably no better than this and chosen in the same way. Defense counsel did not object, but in examining the same juror inquired whether in view of the unanimous verdict requirement as stated by the court, the individual would still require that he be personally convinced of guilt and not sign a guilty verdict merely because he happened to be in the minority. In closing argument, defense counsel again admonished the jury in similar language. In the State's closing argument, the prosecutor stated to the jurors that they were no longer individuals but parts of a unit and that the court would instruct them that it would take a unanimous verdict for conviction.

Over defendant's objection the court gave the following written instruction to the jury before it retired to deliberate:

> "In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others, yet you should examine the questions submitted with proper regard and deference for the opinions of each other, and you should listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If a much larger number of jurors favor conviction, a dissenting juror should consider the reasonableness of his doubt when it makes no impression upon the minds of other jurors, equally intelligent and impartial, and who have heard the same evidence. If upon the other hand, the majority favors acquittal, the minority should ask themselves whether they might not reasonably doubt the correctness of their judgment.
>
> If you should fail to agree on a verdict the case must be retired. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case can be tried any better or more exhaustively then [sic] it has been here, or that more or clearer evidence could be produced on behalf of either side."

The defendant tendered and the court also gave the following instruction:

> "Any verdict you reach must be unanimous. And in your deliberations you should examine the questions submitted with a proper regard and consideration for the opinions of each other. You should listen to each other's arguments with an open mind, and you should make every reasonable effort to reach a verdict."

As to the statement made in the State's final argument, it should first be noted that no objection was made to the argument. In addition, it was not addressed to the "heed the majority" theme criticized in *People v. Prim* (1972), 53 Ill.2d 62, 73, 76, but rather was a response to a closing statement by defense counsel to the effect that a juror should not sign a guilty verdict if he might go home and a year later wonder if the defendant really were guilty. In the sense that the defense comments seem to border on an improper reference to a definition of reasonable doubt, it would appear that the commentary deserved some response by the State, which it received.

Part of the statement by the court in the voir dire examination referred to was similar to the admonishment found in the instruction tendered by the defendant. The statement additionally indicated as did the court's written instruction that if the prospective juror found herself in the minority she should listen to the arguments of the others to see whether they were right and she was wrong; and did not give the same advice if she found herself to be in the majority. Also the statement referred to the necessity of retrial by a similar jury if no unanimous verdict could be reached. Thus the court's statements in voir dire may be considered together with its written instruction in assessing the impact of the admonishments on the jury.

■■ The case before us is not close on its facts. The jury deliberated only 1½ hours in reaching its verdict on multiple offenses; the charge was given with the original instructions and not as a supplemental instruction after a deadlock had developed;; and both in voir dire and in closing argument defense counsel was permitted to emphasize the necessity of each juror being personally convinced of defendant's guilt before returning a guilty verdict. Upon examination of all the circumstances, including the statements made in the course of voir dire examination, in closing argument and by written instruction to the jury, we conclude that the *Allen*-type statements given to the jury did not coerce or interfere with its deliberation to the prejudice of the defendant and thus did not constitute reversible error. *People v. Iverson* (1973), 9 Ill.App.3d 706.

■■ This cause was tried before the opinion of *People v. Prim.* 53 Ill.2d 62, was filed. As we stated in *People v. Iverson,* 9 Ill.App.3d 706, 710, we do not approve the giving of an instruction such as we have before us or any admonishment that contains the "heed the majority" theme, and cases tried following the opinion in *Prim* must be guided by that opinion.

We, therefore, affirm the rape conviction. However, we are in agreement with the defendant's argument that the conspiracy charge must be reversed.

Under the Criminal Code no person can be convicted of both the inchoate and principal offense. (Ill. Rev. Stat. 1971, ch. 38, par. 8—5.) Conspiracy is an inchoate offense. (S.H.A. ch. 38, par. 8—5, Committee Comments (1961).) It was, therefore, error to convict the defendant both for conspiracy to commit rape, and rape. *People v. Miller* (1966), 74 Ill.App.2d 356, 359.

The State contends the point is waived because it was not raised in the trial court, but confesses error if this court elects to entertain the point under the plain error doctrine. We do so elect. The error is both fundamental and patent and requires the conviction on the conspiracy charge to be reversed. See Ill. Rev. Stat. 1973, ch. 110A, par. 615(a); *People v. Baker* (1970), 130 Ill.App.2d 89, 93-94.

We, therefore, affirm the conviction on the charge of rape and reverse the conviction on the charge of conspiracy to commit rape.

Affirmed in part, reversed in part.

GUILD and RECHENMACHER, JJ., concur.