THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANDERS WILLIAMS *et al.*, Defendants-Appellants.

(No. 73-454;

Second District (1st Division)—June 26, 1975.

Ralph Ruebner and Phyllis J. Perko, both of State Appellate Defender's Office, of Elgin, for appellants.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, Edward N. Morris, and Martin Moltz, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendants Standers Williams and Jeremiah Powell were jointly indicted with three other men for deviate sexual assault upon the complaining witness in the Lake County jail. The defendants Williams,

Powell and Young were tried by a jury; Young was acquitted and the defendants Williams and Powell were convicted. Williams was sentenced to a term of 12-36 years and Powell was sentenced to serve 30-90 years in the State Penitentiary.

The defendants raise four grounds for reversal of the conviction, to-wit: they were not proven guilty beyond a reasonable doubt; the trial court erred in giving the *Allen* or "deadlock" instruction (*Allen v. United States* (1896), 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154) when he instructed the jury in the original instance; the defendants were prejudiced by alleged inflammatory closing remarks of the prosecuting attorney; and lastly, that the sentence imposed upon each defendant is excessive for the offense of deviate sexual assault.

Robert Frost, the complaining witness, 17 years of age, was committed to the Lake County jail on the 20th of April, 1973. That evening he was approached by Jeremiah Powell, 33 years of age, and advised that a number of the prisoners in the same area with him were planning a "gang bang" and that only Powell could prevent it. Frost said he would fight them off. That same evening Frost was forced out of his bunk and compelled to go to the latrine where three or more of the other prisoners committed numerous acts of sodomy, per os and per anus, upon the victim. The complaining witness testified that the defendant Powell stated to him, "don't try to get transferred out of this cell because any-where you go in this jail I will get you." During the period of these sexual attacks the victim was variously beaten by the defendants herein and others. The next morning the victim's mother visited him in the jail and he advised her of what had occurred. He was taken from the jail to the hospital where the doctor in the emergency room found that he had red marks on the side of his neck, abrasions and contusions, black and blue marks on his chest and on his shoulder blade area, a contusion of his right upper lip, a broken tooth and tears in his rectum of about one-half to one inch in length. No useful purpose would be served by further describing the various acts committed upon the complaining witness.

■■ The defendant Powell contends that he was not proven guilty beyond a reasonable doubt in that the record indicates that the victim was a willing participant. We do not agree. It is difficult to see how the victim would be a willing participant where he had been beaten by several of the jail inmates in the course of their sexual activities. As indicated, the victim testified in substance as above. One of the jail inmates, who had been jointly indicted for deviate sexual conduct, testified on behalf of the State and substantially corroborated the victim's testimony. The victim was referred to by one of the attackers as being a "white

honkey" as all of the participants in the sexual attack on this man were black. The defendant argues, in support of his contention that the victim was a willing participant, that his failure to make a complaint about the attack until the next morning when his mother visited him in the jail is indicative of the fact that he did not object to the attack. In view of the fact that the defendant Powell warned the victim that he would "get him," in view of the fact that the victim was confined to an area with all of the men who had attacked him, and in further view of the fact that he was beaten by several of his attackers, it is difficult to follow this reasoning and we do not do so. It is to be expressly noted that the defendant Powell did not testify or otherwise deny the offense but merely alleged, through counsel, that the victim was a willing participant. It is also to be noted that the defendant Powell is 33 years of age and the record indicates that he was rather powerfully built, weighing about 180 pounds and that the 17-year-old victim weighed but approximately 120 pounds. In this court's opinion the evidence of defendant's guilt is overwhelming and we find that the defendant Powell was proven guilty beyond a reasonable doubt.

■■ As indicated above, the defendant Young was found not guilty. The defendant Williams contends that the evidence against him was no greater than that against his codefendant Young and, therefore, his conviction should be reversed. In support of this contention he has cited *People v. Patterson* (1972), 52 Ill.2d 421, 288 N.E.2d 403. We have examined that case and find it inapplicable to the case before us. In *Patterson* defendant's testimony was corroborated by three other witnesses and the complainant's testimony was contradictory. That is not the situation in the instant case where the defendant, Standers Williams and defendant Jeremiah Powell did not testify. We find that the defendant Williams was proven guilty beyond a reasonable doubt.

■■ The next contention of the defendants is that the court erred in giving the *Allen* type instruction. This instruction was given by the court together with all the instructions at the close of the evidence. Defendants cite *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601. Reference is made to the *Prim* case with a detailed discussion therein of the use of this instruction. It appears that the basic objection to the instruction is its coercive effect in singling out this issue where the jury appears to be deadlocked. Another basic objection to the instruction is the "heed the majority" portion thereof. In the case before us the "heed the majority" provision was deleted by the court. Since *Prim* this court has had occasion to consider this issue where the instruction was given as part of the original series of instructions in *People v. Casner* (1974), 20 Ill.App.3d 107, 312 N.E.2d 709; *People v. Uribe* (1973), 13 Ill.App.3d

648

1027, 301 N.E.2d 492; and *People v. Iverson* (1973), 9 Ill.App.3d 706, 292 N.E.2d 908. In these cases we considered this specific question where the *Allen* type instruction was given as a part of the original series of instruction, not containing the "heed the majority" admonition therein. In all three of these cases we stated that where the evidence of guilt is overwhelming, the giving of the instruction did not constitute reversible error. Since we find that this is the situation in the present case, we likewise find that the giving of the *Allen* type instruction did not constitute reversible error.

■■ The next contention of the defendants is that the closing argument of the prosecuting attorney was prejudicial. In his closing argument the prosecuting attorney referred to the actions of Jeremiah Powell as being animalistic. In *People v. Elder* (1962), 25 Ill.2d 612, 615, 186 N.E.2d 27, 29, the prosecuting attorney used exactly the same term in describing the actions of the defendant in a rape case. Commenting upon this, the supreme court said:

> "These characterizations were supported by the complaining witness's description of the rape and the accompanying deviate acts. No objections to the allegedly prejudicial argument were interposed in the trial court. We are of the opinion that the remarks were not of such a nature as to require a reversal of the conviction." (25 Ill.2d 612, 615.)

The courts have repeatedly stated that it is proper for the prosecutor in his closing remarks to reflect unfavorably upon the accused and, under certain circumstances, to even indulge in invective. (See *People v. Halteman* (1956), 10 Ill.2d 74, 139 N.E.2d 286; *Crocker v. People* (1904), 213 Ill. 287, 72 N.E. 743; *People v. Oparka* (1967), 85 Ill.App.2d 33, 228 N.E.2d 291; and *People v. Williams* (1962), 26 Ill.2d 190, 186 N.E.2d 353.) The defendant Williams also complains of the prosecutor describing the action of Standers Williams in taking the victim to the lavatory where the acts were committed as follows:

> "* * * he walked with him as a guard to—as with a prisoner—walked with him to the slaughter area * * * [and] * * * set him up * * * for the kill * * *."

Objections to the above remarks were sustained by the court and one of the two references to the defendant as "animalistic" was stricken. Under the facts of this case, the closing remarks of the prosecutor do not constitute reversible error.

■■ Counsel for the defendants contends that the sentences imposed are excessive. In the case of Standers Williams, at the time of the sexual assault he had been confined in the Lake County jail on a charge of armed robbery to which he pled guilty on July 23, 1973, and was sentenced to

the penitentiary for 2-6 years prior to the instant trial. He was found guilty by the jury herein of the crime of deviate sexual assault on August 17, 1973. As to Jeremiah Powell, we find that in 1964, he was convicted of rape and was sentenced to 30-50 years. In that case his conviction was reversed and remanded for a new trial and in 1972, he subsequently pled guilty to the same charge and was sentenced to 12-25 years. Four months later, while on parole, he was arrested and committed to the Lake County jail for the offense of armed robbery and subsequently he committed the deviate sexual assault complained of herein. Defense counsel argues that there "is a high incidence of homosexual activity among incarcerated persons, thus, the instant offense was one unique to a prison situation * * *." This is a specious argument. To countenance or condone forcible deviate sexual acts upon a fellow prisoner is scarcely conducive to the orderly administration of justice. We do not deem the sentence imposed upon Jeremiah Powell or Standers Williams to be excessive. As the supreme court stated in *People v. Sprinkle* (1974), 56 Ill.2d 257, 264, 307 N.E.2d 161, 164-65:

> "The trial court is normally in a better position during the trial and hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. [Citations.]"

Since the filing of the briefs herein the defendants have cited *People v. Carter* (1974), 19 Ill.App.3d 21, 311 N.E.2d 213, with relation to the contention that defendants were not proven guilty beyond a reasonable doubt. We find *Carter* to be inapplicable to the case before us. In *Carter* one of three brothers was allegedly killed by the defendant. The appellate court, in reversing, stated:

> "The entire testimony of the Garrett brothers was so replete with contradictions and inconsistencies that a conviction based upon such testimony cannot stand. * * * In the case at bar, no plausible evidence was introduced by the State which would support a finding of guilty as to the defendant, Tony Carter." (19 Ill.App.3d 19, 23, 311 N.E.2d 213, 215.)

As we have previously indicated, in this court's opinion the evidence of the guilt of defendants herein was overwhelming.

■■ Since the filing of the briefs herein this court has rendered its decision in *Powell v. Powell* (1975), 27 Ill.App.3d 834, 327 N.E.2d 32, involving the same defendant Powell as in this case, wherein this court vacated defendant's sentence and remanded the cause for resentencing due solely to the trial court's heavy reliance upon an 8-year-old psychiatric report in sentencing the defendant in that case. Subsequent to that conviction the defendant herein was tried and, while it may be true that

the same psychiatric report was available to the trial court, no objection thereto was made at the trial herein. In the robbery case against Powell the admission of the psychiatric report was admitted over the "strenuous objection" of defense counsel. That is not the situation in the instant case. In the instant case no hearing in aggravation and mitigation was conducted and it is interesting to note that the trial court stated:

> "There has been at no time any suggestion by the State, by the Defendant, nor has the Court observed any aberrations on the part of this man which might in any way have suggested something be mentally wrong with this gentleman. And the Court therefore is forced to the opinion that he just doesn't care. When the Court is faced with a person with that attitude and has committed the three crimes which the Court has referred to, the Court feels that society must be protected."

We do not feel that the trial court was influenced in any way by the "stale" psychiatric report as to the defendant in this case. The defendant was tried and convicted of rape, was released on parole and within 4 months was convicted of robbery, which conviction has been affirmed by this court. While incarcerated he committed the instant offense and was thereupon sentenced to 30-90 years as indicated above. Under these facts we feel that the sentence imposed upon the defendant was within the discretion of the trial court and was not excessive nor prompted by reliance upon the "stale" psychiatric report.

The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.