THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EMS, Defendant-Appellant.

Third District    No. 79-503

Opinion filed March 12, 1980.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Having been found guilty on two counts of theft of firearms and one count of theft of property having a value of less than $150 and having been sentenced to concurrent terms of imprisonment of two years, two years, and 365 days, respectively, the defendant, Robert Ems, instituted this appeal. In essence, the only issue raised is whether the defendant had been proven guilty beyond a reasonable doubt.

Four separate indictments were returned against the defendant. Each of the indictments charged the defendant with theft of property having a value of more than $150, as follows:

"No. 79 CF 200—That on January 12, 1979, in said Peoria County, State of Illinois ROBERT EMS committed the offense of theft in that he knowingly exerted unauthorized control over property of Ray Langenbach, said property being three shotguns, and a .22 caliber rifle, having a total value of more than $150.00, with the intent to permanently deprive said owner of the use and benefit of said property, in violation of Paragraph 16—1(a)(1), Chapter 38, Illinois Revised Statutes."

"No. 79 CF 465—That on January 12, 1979, in said Peoria County, State of Illinois ROBERT EMS committed the offense of theft in that he knowingly exerted unauthorized control over property of Harold Connaughton, said property being two shotguns, a revolver and a .22 caliber rifle, having a total value of more than $150.00, with the intent to permanently deprive said owner of the use and benefit of said property, in violation of Paragraph 16— 1(a)(1), Chapter 38, Illinois Revised Statutes."

"No. 79 CF 466—That on January 12, 1979, in said Peoria County, State of Illinois ROBERT EMS committed the offense of theft in that he knowingly exerted unauthorized control over property of Roy Danz, said property being a tool box, assorted tools, and a chain saw, having a total value of more than $150.00, with the

intent to permanently deprive said owner of the use and benefit of said property, in violation of Paragraph 16—1(a)(1), Chapter 38, Illinois Revised Statutes."

"No. 79 CF 467—That on January 12, 1979, in said Peoria County, State of Illinois ROBERT EMS committed the offense of theft in that he knowingly exerted unauthorized control over property of Ira Whitten, being a Browning, lite 12 gauge shotgun, having a total value of more than $150.00, with the intent to permanently deprive said owner of the use and benefit of said property, in violation of Paragraph 16—1(a)(1), Chapter 38, Illinois Revised Statutes."

At the trial, Mr. Ray Langenbach testified that his residence on Hicks Hollow Road was burglarized on December 22, 1978. He further testified that during the burglary seven guns and other items were stolen and identified People's exhibits Nos. 6, 7, 8 and 9 as being his Ithaca 12-gauge shotgun, his Remington 20-gauge shotgun, his J. C. Higgins 12-gauge shotgun and his .22 Mossburg rifle, respectively. David Elmore, special agent with the Department of Law Enforcement, testified that he observed during the execution of a search warrant each of these exhibits on January 12, 1979, in a storage area under a stairwell in the basement of the defendant's residence.

The first witness to testify regarding case number 79 CF 466 was Mr. Roy Danz, who stated that his residence and garage, located on Highview Road in Tazewell County, were burglarized around Christmas of 1978. Mr. Danz further testified that taken in the burglary were a tool box, chain saw, bushel of seed, citizen band radios, jewelry, cash, cameras and a television and that People's exhibits Nos. 10 and 11 were his tool box and chain saw.

Case No. 79 CF 467 involved the burglary of the Ira Whitten residence on Koerner Road in Peoria County. Mr. Ira Whitten testified that his home was entered and a Remington automatic, a Winchester .97 pump shotgun, a Browning 12-gauge shotgun and a .38-caliber pistol were taken on November 27, 1978. Mr. Whitten was shown People's exhibit No. 5, and identified it as being his gun. He further stated that People's exhibit No. 5 was that Winchester model .97, and that he did not give anyone permission to remove it from his residence.

James Carr testified that approximately one month prior to November 1, 1978, he had a conversation with the defendant and that the defendant had stated that he "would like to have certain- types of shotguns." Objection was made to this answer and sustained. Carr later testified that during a conversation with the defendant, the defendant stated he "would buy the guns if they were in good condition."

Carr also testified that on December 22, 1978, he was involved in a burglary on Hicks Hollow Road, and described the driveway in such a

fashion that it matched the description given by Mr. Langenbach. Mr. Carr was then shown People's exhibit No. 6, which he recognized as having been at the residence on Hicks Hollow Road, and stated that he had sold that item to the defendant and believed that the sale had taken place on the same day as the burglary. He was further shown People's exhibit No. 7, which he stated he sold to Mr. Ems. After being shown People's exhibit No. 8, Carr stated it came from the Hicks Hollow burglary, but he was not sure that this gun had been taken to the defendant, but People's exhibit No. 9 was.

Mr. Carr further testified that he recalled being at a residence on Highview Road in Tazewell County, Illinois, on December 29, 1979, and that while at that location he burglarized the house and the garage, taking assorted tools, a chain saw, a scanner and a base citizen's band radio. He further testified that the chain saw and tools were taken to the defendant and sold to him the following day. Mr. Carr was shown People's exhibits Nos. 10 and 11, and identified each as being an item taken by him from the Highview Road address.

Carr was further questioned regarding an incident of November 22 at a redwood cottage on Koerner Road, and in that regard he testified that on November 22 he did have occasion to be at a redwood cottage on Koerner Road and that, while at that location, he removed certain items, but did not recall what was taken. In this regard, he was shown a gun which was People's exhibit No. 5 and stated that it was taken from a burglary, but he did not know which one. Carr testified that the total receipts from the sale of items to the defendant were somewhere in the range of $300-$400.

With respect to Mr. Carr's criminal involvement, he testified that he had committed approximately 28 burglaries in the Peoria, Tazewell and Woodford County area during a three-month span in late 1978. He further related that prior to pleading guilty to the instant burglary charges, he had been convicted of burglary in 1974 or 1975, five counts of unlawful delivery of a substance represented to be a controlled substance, and two cannabis deliveries in 1977.

At the close of the State's evidence the defendant made a motion for directed verdict with respect to each indictment. The court granted a directed verdict with respect to each, as follows:

> No. 79 CF 200—Verdict directed for failure to prove value in excess of $150.
> No. 79 CF 465—Verdict directed for failure to prove ownership.
> No. 79 CF 466—Verdict directed for failure to prove value in excess of $150.
> No. 79 CF 467—Verdict directed for failure to prove value in excess of $150.

Since the defendant elected not to present any evidence, the trial court then conducted a conference on instructions, during which the State requested that the jury be instructed on the lesser included offenses of theft of firearms, in cases numbered 79 CF 200 and 79 CF 467, and misdemeanor theft, in case No. 79 CF 466. The instructions on theft of firearms were given over objection of the defendant, and the defendant's renewed motion for directed verdicts was denied.

■■ ■ The defendant's first argument is that he was not proven guilty beyond a reasonable doubt because there is no proof the defendant was aware the items he purchased from Carr had been stolen. As charged, the offense of theft requires a knowing exertion of unauthorized control over the property of the owner with the intent to permanently deprive the owner of its use or benefit. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1).) While mere possession is not sufficient proof of a knowing exertion of unauthorized control (see *People v. Weiss* (1976), 34 Ill. App. 3d 840, 341 N.E.2d 79), such guilty knowledge may be proved through the presentation of circumstantial evidence (*People v. Stewart* (1960), 20 Ill. 2d 387, 169 N.E.2d 796). Although the defendant has not been charged with or found guilty of receiving stolen property (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)), cases of that type are analogous for our purpose because the defendant argues he did not know the items were stolen and, therefore, he could not have knowingly exerted unauthorized control. The guilty knowledge required to convict a person of receiving stolen property "may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen and by the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was received." *People v. Stewart* (1960), 20 Ill. 2d 387, 392, 169 N.E.2d 796, 799.

There are several facts from which the jury could have inferred that the defendant knew the items were stolen. First, Carr was only 22 years old and, prior to his transactions with the defendant, had an extensive criminal record, including several convictions for drug offenses and two burglary convictions. Carr testified that he sold several guns, a chain saw and tools to the defendant for only $300 to $400. In addition, Carr testified that he and his partner occasionally gave .22-caliber rifles to anyone purchasing high-caliber guns, and that, on one occasion, the defendant was given a .22-caliber rifle. Also, all of the transactions took place at the defendant's residence, and many of the items purchased were in some way damaged. Certainly, these facts would induce a belief in a reasonable mind that the property had been stolen.

There is, however, additional evidence of the defendant's guilty knowledge. Carr testified that after purchasing the guns, the defendant placed them in a closet in the defendant's basement. When the police

officers arrived at the defendant's residence to execute a search warrant, the defendant and his dog came to the door. Since the dog appeared vicious, an officer asked that the dog be locked up. Instead of complying, the defendant released the dog and ran down the basement stairs. Following the defendant to the basement, the officers observed him in front of a storage closet with a large, heavy door, wherein the items of stolen property were found. Based on all of this evidence, a jury could find that the defendant had the requisite guilty knowledge to have committed the offenses charged.

The defendant next contends that he was not proven guilty beyond a reasonable doubt of the offenses of theft of firearms because there was no evidence that these guns were capable of meeting the statutory requirements. " 'Firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas * * *." Ill. Rev. Stat. 1977, ch. 38, par. 83—1.1.

■■ ■ The evidence presented in these cases was that a Winchester .97 pump shotgun taken from Ira Whitten's residence was found in the defendant's basement. It is common knowledge that a shotgun is designed to expel projectiles by an explosion or expansion of gases, and the jury could so find. No technical evidence is necessary. Likewise, Mr. Langenbach testified that exhibits Nos. 6, 7, 8 and 9 were three shotguns and a rifle, respectively. This evidence is sufficient to support findings of guilty beyond a reasonable doubt.

It is also asserted by the defendant that he was not allowed to properly defend these actions by reason of the State's tactics. Specifically, the defendant complains that the State charged theft of property having a value in excess of $150, failed to produce any evidence tending to prove the value of the items and then sought instructions on the lesser included offense of theft of firearms.

■ The indictments involved in these convictions charge that the defendant knowingly exerted unauthorized control over three shotguns and a rifle (79 CF 200), and over a Browning 12-gauge shotgun (79 CF 467). Since such items are commonly known to be firearms and since such items fit the legal definition of "firearm" (Ill. Rev. Stat. 1977, ch. 38, par. 83—1.1), the indictments were sufficient to give the defendant notice of the offense charged so as to enable him to prepare his defense. See *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.